UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DORIN MOROIANU, | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| v. | )   No. 4:18-CV-2088 PLC |
| | ) |
| ANDREW SAUL,[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|        **Defendant.** | ) |

**MEMORANDUM AND ORDER**

Plaintiff Dorin Moroianu seeks review of the decision of Defendant Social Security Commissioner Andrew Saul, denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act.  For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.    Background & Procedural History**

In October 2015, Plaintiff, then fifty-two years old, filed applications for DIB and SSI, alleging that he was disabled as of July 7, 2015 as a result of: asthma, COPD, right ankle pain, left knee pain, and depression.  (Tr. 75, 194, 201)  The Social Security Administration (SSA) denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 99-100, 113-14)  The SSA granted Plaintiff's request for review and conducted a hearing on January 23, 2018, at which Plaintiff and a vocational expert testified.  (Tr. 33-74)

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

1

In a decision dated April 2, 2018, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920 and concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 7, 2015, through the date of this decision[.]" (Tr. 15-24) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a) (4)-(5), 404.955, 404.981, and 422.210(a)).

## II.     Evidence Before the ALJ

Plaintiff testified that he was born in February 1964 and had a degree in "liquid metals, energy" from a university in Romania. (Tr. 40-41) Plaintiff most recently worked as a building superintendent from January 2015 through July 2015. (Tr. 42) Plaintiff stated that he was fired from that job because "I thought they don't feel like … I did my job."[2] (Tr. 44)

Prior to working as a building superintendent, Plaintiff worked at an aluminum production facility, where he suffered a chemical exposure. (Tr. 45) Plaintiff returned to the job one month after his injury, but he only worked "[f]or two days, and then I got sick again." (Tr. 46)

Plaintiff explained that he had not been able to work full time since July 2015 because "I get very tired, short of breath. I have to rest very often, and my cough." (Tr. 52) Plaintiff affirmed that he coughed "all day long" and the coughing affected his energy level. (Tr. 65) Plaintiff wore an ankle brace prescribed by a doctor and took the following medications: Symbicort, Ventolin, Qvar, and montelukast. (Tr. 53)

---

[2] However, Plaintiff told a psychological evaluator that he was "fired over a 'personality conflict' …. something about not getting along with one of the tenants….He called the police on these tenants and filed a report for harassment." (Tr. 399) In his function report, Plaintiff wrote that he was fired due to "[i]ssues with tenants in the building and my boss." (Tr. 261)

2

Plaintiff testified that, on a typical day, he awoke with his wife at 5:30 a.m. then went back to sleep until about 9:30 a.m. (Tr. 55) Plaintiff had difficulty sleeping because of his cough and usually awoke "at least twice" each night. (Tr. 63) During the day, he generally took two one-hour naps. (Tr. 64-65) Plaintiff tried to "get out if the weather is not bad," but "I lay down most of the day" because "I get tired very quick." (Id.) Plaintiff was able to perform his personal care and load the dishwasher, but his wife cooked, cleaned, and did laundry. (Tr. 55, 57-58) Plaintiff's wife also did most of the yardwork, but he did about "maybe 10 percent[.]" (Tr. 58) Plaintiff and his wife went grocery shopping once or twice a month for fifteen to twenty minutes. (Tr. 59)

Plaintiff estimated that he could lift and carry five to ten pounds and walk "a couple blocks." (Id.) When the ALJ asked Plaintiff whether he had travelled since July 2015, Plaintiff stated that he went to Chicago for a weekend in Fall 2017 because his wife needed to go to the Romanian consulate. (Tr. 60). In February 2017, he spent five days in the Dominican Republic. (Id.)

A vocational expert also testified at the hearing. (Tr. 66-74) The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and work experience who was able to perform light work with the following limitations:

> can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; occasionally kneel; occasionally crouch; occasionally crawl; can never be exposed to humidity or wetness; never exposed to extreme heat; never exposed to extreme cold; never exposed to dust, odors, fumes, and/or pulmonary irritants.

(Tr. 69) The vocational expert stated that such an individual could perform the following light, unskilled jobs: cafeteria attendant, marking clerk, and small products assembler. (Tr. 70) When the ALJ added the limitation that the hypothetical individual would be off task twenty percent of the workday, the vocational expert testified that the person would not be unable to maintain

3

competitive employment. (Tr. 72) The vocational expert opined that hourly unscheduled rest breaks would also preclude employment. (Tr. 73)

In regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his statement of material facts as admitted by the Commissioner. [ECF Nos. 17-1, 22-1] The Court also adopts the facts contained in the Commissioner's statement of additional facts because Plaintiff did not dispute them. [ECF No. 22-2]

### III.     Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a), 416.920. Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. at §§ 404.1520(c), 416.920(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would

4

have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quotation omitted). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Subpart P, Appendix 1. Id. at 404.1520(d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). RFC is defined as "the most a claimant can do despite her limitations." Id. (citing 20 C.F.R. § 404.1545(a)(1)).

At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(g), 416.920(g); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. Id. at §§ 404.1520(g), 416.920(g).

**IV.    ALJ's Decision**

Applying the five-step evaluation, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since July 7, 2015, the alleged onset date; and (2) had the severe

impairments of asthma, reactive airway dysfunction syndrome (RADS), obesity, degenerative joint disease of the bilateral knees and right ankle, and chronic rhinitis, and the non-severe impairments of gout and depression. (Tr. 17-18)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Id)

After reviewing Plaintiff's testimony and medical records, the ALJ found that, while his "medically determinable impairments could have been reasonably expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 20)  The ALJ determined that Plaintiff had the RFC to perform light work "except he may occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.  He can occasionally balance, kneel, crouch, and crawl.  He can never be exposed to humidity, wetness, extremes of heat or cold, or dust, fumes, or other pulmonary irritants." (Tr. 19)  Finally, the ALJ found that Plaintiff was unable to perform his past relevant work, but he could perform other jobs that existed in significant numbers in the national economy, such as cafeteria attendant, marking clerk, and small product assembler.  (Tr. 22-23)  The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 24)

**V.    Discussion**

Plaintiff claims that substantial evidence does not support the ALJ's decision because the ALJ failed to properly: (1) assess the credibility of Plaintiff's subjective complaints; and (2) weigh the opinion of his treating physician. (ECF No. 17)  The Commissioner counters that the ALJ properly evaluated Plaintiff's subjective allegations and weighed the medical opinions.  (Tr. 22)

A.  Standard of Judicial Review

6

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Subjective complaints

Plaintiff claims the ALJ improperly evaluated his subjective complaints and erred in determining that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record.[3] More

---

[3] The SSA issued a new ruling, effective March 28, 2016, that eliminates the use of the term "credibility" when evaluating a claimant's subjective statement of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (SSA Oct. 2017). The factors to be considered in evaluating a claimant's statements, however, remain the same. See id.; Schmidt v. Berryhill, No. 4:17-CV02375 CDP, 2019 WL 339634, at *3 n.4 (E.D. Mo. Jan. 28, 2019). Because the ALJ's decision in this case was issued after March 28, 2016, SSR 16-3p applies to this matter.

specifically, Plaintiff argues that:  (1) the record did not support the ALJ's findings that his symptoms were controlled by medications; and (2) the ALJ failed to explain how his biannual pulmonary appointments, lack of treatment for ankle pain, and travel undermined his subjective complaints.  In response, the Commissioner asserts that the ALJ properly found that Plaintiff's allegations were inconsistent with the record as a whole, including the medical opinions, medical treatment, and medical evidence.

An ALJ must evaluate the credibility of a claimant's subjective complaints before determining his or her RFC.  Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007).  The Eighth Circuit requires that an ALJ consider the following factors when assessing a claimant's subjective complaints:  1) the claimant's daily activities; 2) the duration, intensity, and frequency of the pain; 3) precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints.  Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony.  Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).  "Because the ALJ [is] in a better position to evaluate credibility, [a court] defer[s] to [the ALJ's] credibility determinations as long as they [are] supported by good reasons and substantial evidence." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).

Here, the ALJ reviewed the objective medical evidence and determined it did not support the alleged severity and limiting effects of Plaintiff's symptoms.  For example, the ALJ noted that the 2016 and 2017 treatment notes of Plaintiff's pulmonologist Dr. Shen "generally indicate that

the claimant continued to cough but is no [sic] acute distress." (Tr. 21) Additionally, the ALJ observed that, in May 2015, Dr. Shen stated that Plaintiff was able to return to work in the smelting "industry if he could find a job where he could avoid dust, odors, and fumes." (Tr. 21) Dr. Shen's treatment notes similarly stated in August 2015, May 2016, and November 2016 that Plaintiff was able to work in an environment free of dust, odors, or fumes. (Tr. 433, 338, 442) Dr. Shen also observed that, despite his persistent cough, Plaintiff did not experience shortness of breath "getting around exam room" in February 2016 and he "had no problem sitting quietly" in April 2017. (Tr. 344, 429) At Plaintiff's most recent appointment with Dr. Shen in December 2017, Dr. Shen noted that his condition had been stable for twelve months and directed Plaintiff to follow up in one year. (Tr. 426)

Plaintiff argues that the medical records did not support the ALJ's finding that Plaintiff's symptoms appeared "to be controlled to some extent by medications." (Tr. 21) Plaintiff correctly points out that, Dr. Shen regularly noted Plaintiff's "incapacitating" cough and inability to perform peak flow testing. However, Dr. Shen observed improvements in Plaintiff's cough in May and November 2016. (Tr. 434, 442) Furthermore, as previously discussed, Dr. Shen repeatedly opined that Plaintiff was able to work in an environment free of pulmonary irritants. This ability to return to work suggests that Plaintiff's symptoms were adequately controlled. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Renstrom, 680 F.3d at 1066 (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)).

In assessing the credibility of Plaintiff's subjective complaints, the ALJ also discussed the frequency of Plaintiff's medical treatment. Although Plaintiff alleged incapacitating pain in his knees and right ankle, he received "no treatment whatsoever for his knee[s] since the alleged onset date and no treatment for his ankle since 2015." (Tr. 21) A claimant's "failure to seek medical

9

assistance for [his] alleged … impairments contradicts [his] subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits." Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (quoting Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997)).

The ALJ also considered the fact that Plaintiff saw Dr. Shen only twice a year for his respiratory impairments. (Tr. 21)  Plaintiff argues, without citation to authority, that because he had reached maximum medical improvement and "there [was] nothing more that [his] providers c[ould] do for him, the fact that he only sees them twice a year does not diminish the severity of [P]laintiff's symptoms." [ECF No. 17]  While the fact of biannual monitoring itself does not necessarily undermine Plaintiff's claims of disabling symptoms, the ALJ properly considered that Plaintiff was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms."  Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012); see also  Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

Additionally, the ALJ properly considered Plaintiff's work history and noted that, after Plaintiff sustained his injury in 2013, he worked briefly "in construction" and as a building superintendent. (Tr. 20)  Plaintiff's continued work suggests that he was not totally disabled by that injury.  Furthermore, Plaintiff's alleged onset date is July 2015, when he was terminated from his job as a building superintendent, but the record suggests that he did not stop working because of his impairments.  To the contrary, Plaintiff informed a psychologist that his employer terminated him for calling the police on his tenants.  (Tr. 261, 399)  "Courts have found it relevant to credibility when a claimant leaves work for reasons other than [his] medical condition." Goff, 421 F.3d at 793.  See also Milam, 794 F.3d at 985; Medhaug v. Astrue, 578 F.3d 805, 816 (8th Cir. 2009).

10

Finally, as further evidence that Plaintiff's symptoms were not totally disabling, the ALJ observed that Plaintiff's "ability to negotiate international travel three times since the alleged onset date, suggests a degree of stamina and mobility that he denied at the hearing." (Tr. 21)  Plaintiff disputes the ALJ's finding that his travel undermined his claims of disabling symptoms because "one of the trips was to Chicago to visit the Romanian Embassy regarding his wife's passport for the weekend" and another was "a 5-day vacation in the Dominican Republic." [ECF No. 17 at 5]  Regardless of Plaintiff's reasons for traveling, the ability to do so undermines his subjective claims of total disability.  See, e.g., Renstrom, 680 F.3d at 1067 (the plaintiff's "multiple vacations, daily chores, and ability to provide self care" undermined his subjective complaints).  "[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Id. (quoting Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010)).

To the extent the ALJ did not specifically address each Polaski factor, the Court notes that an ALJ "is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).  Here, the ALJ pointed to objective medical evidence, Plaintiff's work and travel history, and the effectiveness of medication in controlling Plaintiff's symptoms, all of which supported the ALJ's determination regarding the severity and limiting effects of Plaintiff's symptoms.  Because the ALJ's determination to discredit Plaintiff's subjective complaints is supported by good reasons and substantial evidence, the Court defers to the ALJ's determination.  See, e.g., Renstrom, 680 F.3d at 1067; Gonzalez, 465 F.3d at 894.

C.  Treating physician opinion

Plaintiff claims that the ALJ failed to properly weigh the medical opinion evidence.  More specifically, Plaintiff maintains that the ALJ assigned too little weight to the opinion of Plaintiff's

11

treating pulmonologist, Dr. Shen. The Commissioner counters that the ALJ properly assigned little weight to Dr. Shen's opinion because it was inconsistent with his treatment notes.

A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."[4] Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Id. This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians. See 20 C.F.R. §§ 404.1527, 416.927; Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as [a] whole." Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (quotation omitted).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ

---

[4] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the SSA will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. Plaintiff filed his application in 2015, so the previous regulations apply.

'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Shen first evaluated Plaintiff in December 2014.  (Tr. 346)  Dr. Shen observed that, during the exam, Plaintiff "coughed the entire time," and he diagnosed Plaintiff with work-related asthma due to chlorine exposure and RADs.  (Tr. 346-47)  Dr. Shen opined that changes in treatment would improve Plaintiff's condition, and he prescribed Prilosec, montelukast, Symbicort, and Ventolin, and discontinued Tudorza.  (Tr. 347-78).  When Dr. Shen revaluated Plaintiff the following month, he observed that Plaintiff was "60% better" with the new medications. (Tr. 349)  However, Dr. Shen ordered Plaintiff "off work until further notice." (Id.)

In February 2015, Dr. Shen found that Plaintiff had reached maximum medical improvement and noted that Plaintiff "can now return to work in the foundry, smelting industry. He is to avoid as much as possible dust, odor, and fumes and can retry work in that environment." (Tr. 350)  Dr. Shen prescribed Qvar, and continued Plaintiff's Symbicort and montelukast.  (Id.)

When Plaintiff followed up with Dr. Shen in May 2015, Plaintiff reported that he was unable to return to work at the foundry "as they could find nothing that met the conditions of no exposure to chemicals, dust, odors, and fumes."  (Tr. 351)  However, Plaintiff was "currently working four hours five times a week at an office somewhere else."  (Id.)  Plaintiff continued to "have issues with coughing and shortness of breath," remained "impaired with day-to-day-activities," and coughed throughout the appointment.  (Id.)  In August 2015, Plaintiff's condition had not changed and he informed Dr. Shen that he worked four months as a building superintendent but "they no longer need[ him] for the job[.]"  (Tr. 338)

At Plaintiff's appointment with Dr. Shen in February 2016, Dr Shen observed "[e]pisodic cough, no phlegm, no[] SOB getting around the exam room.  Generally no acute distress."  (Tr.

13

344) In May 2016, Dr. Shen noted that Plaintiff reported "some improvement in exercise" with the addition of Qvar, but he "[s]till has incapacitating cough." (Tr. 442) Dr. Shen opined: "It is unlikely that he will find employment in his field that does not require exposure to chemical dust or fumes. I can only see working in an office where no odors and fumes drift in from the plant." (Id.) Dr. Shen directed Plaintiff to follow up in six months and "call whenever exacerbations occur." (Id.)

When Plaintiff presented for his follow-up appointment in November 2016, Dr. Shen observed that Plaintiff "coughed intermittently during examination but overall seems to be slightly less than when he was here in May." (Tr. 434) Dr. Shen wrote: "At this point remains unable to work anything other than an office setting that is clear of dust[,] odors and fumes." (Tr. 433)

At Plaintiff's April 2017 appointment, Dr. Shen noted that Plaintiff's "[c]ough is continuous still" and he was "unemployed and working portal [sic] some with his employer." (Tr. 427) Plaintiff could not "do peak properly due to coughing," but he had "no problem sitting quietly, activity makes him cough. Generally no acute distress." (Tr. 428-29) At Plaintiff's last recorded appointment with Dr. Shen in December 2017, Dr. Shen observed that Plaintiff was "[s]table the last 12 months, unable to work due to constant cough with any odors or fumes or exertion." (Tr. 425)

Dr. Shen completed a pulmonary RFC questionnaire, or medical source statement (MSS), for Plaintiff in December 2017. (Tr. 418- 21) Dr. Shen stated that Plaintiff suffered shortness of breath, chest tightness, wheezing, and coughing, precipitated by upper respiratory infection, exercise, irritants, and/or cold air/changes in weather. (Tr. 418) Dr. Shen estimated that Plaintiff could: walk one to two blocks without rest or severe pain; sit for more than two hours at a time for at least six hours per workday; stand for more than two hours at a time; and stand or walk for

14

a total of at least six hours per workday. (Tr. 420)  However, Dr. Shen opined that Plaintiff would require hourly unscheduled breaks, during which he would have to sit quietly for "several minutes." (Id.)  Additionally, Dr. Shen stated that Plaintiff could: occasionally lift/carry less than ten pounds; rarely lift/carry ten pounds or twist; and never carry twenty pounds, stoop/bend, crouch/squat, climb ladders, or climb stairs.  (Id.)

In regard to environmental restrictions, Dr. Shen reported that Plaintiff must "avoid even moderate exposure" to wetness and "avoid all exposure" to: extreme cold and heat; high humidity; cigarette smoke; perfumes; soldering fluxes; solvents/cleaners; fumes, odors, gases; dust; and chemicals.  (Tr. 421)  Dr. Shen opined that Plaintiff's chronic cough would "frequently" interfere with his attention and concentration and rendered him "incapable of even 'low stress' jobs." (Tr. 419)  Dr. Shen also estimated that Plaintiff's respiratory condition would cause him to be absent from work "more than four days per month." (Tr. 421)  Finally, Dr. Shen stated that the symptoms and limitations contained in the MSS applied as of December 2014.  (Id.)

The ALJ reviewed Dr. Shen's treatment notes and medical opinion, and determined that his treatment notes did not support his December 2017 opinion that Plaintiff "was unable to sustain competitive employment and has been unable to do so since December 2014[.]" (Tr. 21)  The ALJ explained that this statement was "inconsistent with [Dr. Shen's] earlier statements that the claimant would be able to return to work in the foundry smelting industry but must avoid all dust, odors, and fumes." (Id.)  The ALJ assigned "little weight" to Dr. Shen's opinion because it was inconsistent with "numerous other opinions rendered by the same doctor that … claimant's only limitation was dust, odors, and fumes" and nothing in the record supported Dr. Shen's statement that Plaintiff could never stoop and would be absent from work four days per month.  (Tr. 22)

15

Based on the Court's review of the record, substantial evidence supported the ALJ's evaluation of Dr. Shen's medical opinion.  The ALJ discounted Dr. Shen's MSS because his opinion that Plaintiff was incapable of maintaining employment was contradicted by numerous earlier statements that Plaintiff was capable of working in environments without odors, fumes, and dusts.  Indeed, Dr. Shen noted that Plaintiff was able to work with environmental restrictions in February 2015, August 2015, May 2016, and November 2016.  Nor do the records reflect a decline in Plaintiff's condition that would support the more serious restrictions Dr. Shen recorded in the December 2017 MSS.  To the contrary, Plaintiff's symptoms appeared to be controlled by medication and his condition was stable.  "A treating physician's own inconsistency may … undermine and diminish or eliminate the weight given his opinions."  Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006).  See also Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018).

Importantly, the ALJ did not entirely discount Dr. Shen's medical opinion.  The ALJ limited Plaintiff to a restricted range of light work. (Tr. 19)  Moreover, the ALJ adopted all of Dr. Shen's environmental restrictions, stating that Plaintiff "can never be exposed to humidity, wetness, extremes of heat or cold, or dust, fumes, or other pulmonary irritants." (Id.)  Upon review, the Court finds that the ALJ properly evaluated Dr. Shen's medical opinion and provided "good reasons" for assigning it little weight.

### IV. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.  Accordingly,

16

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

                                                       PATRICIA L. COHEN
                                                     UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2020